I'm Paul Yehweh. Good morning. Please, the Court. I'm going to address the two issues that are uncertified at this point in time. Excuse me. We need to fix that. Maybe I can do that. No, I can't. Excuse me. I can turn it over? Yes. That's volume. That's not going to turn it off by itself. Okay. Thank you. Yes, sir. Okay. To begin again, I'm going to address the two uncertified issues that I raised. And I believe briefing needs to be had. I can't hear you very well. Excuse me. I'm going to address the two uncertified issues that I believe briefing has not been made, needs to be made on. Yes. It's a hard problem. I actually tend to agree with you that two of the uncertified issues, and I was interested to see if you have the two same ones, are probably the most fruitful. On the other hand, they haven't been certified and there's been no response from the government. I don't know how my colleagues feel about that. Well, I was told today that I'm to come here and convince you that they need to be briefed. All right. Okay. So go ahead. And I believe I will do so. I would like to first address the procedural side of those. This claim that the Sandoval issue was futile, is futile, has always been futile, did not arise until the Nevada Supreme Court issued its decision in NECA in December of 2008. Was his my understanding was that Amati's case wasn't final at that point. It was still pending. Oh, it was final. It was final. So this says, my notes say that it wasn't affirmed on appeal until 2001 by the Nevada Supreme Court. My date is the, yes, it wasn't until 2001, but NECA was 2008. But Byford was in 2000. Byford was 2000, correct. So that convictions that weren't final in 2000 were entitled to the rule in Byford. Well, in that case, then, it's a, it's a. That's what NECA said. That's correct. So he would have had an opportunity to raise that, because Byford changed the law, but his, his appeal was still pending and he would be entitled to the rule in Byford. And then it's not a Federal issue at this point in time, if that's the case. My understanding is that the trial took place before Byford. Is that right? That's correct. Mr. Amati's appeal was filed after Byford, the month after Byford was decided. Byford was decided in February of 2000. Mr. Amati filed his appeal in March of 2000. I, it would help me if you just summarized this claim and, and, and. The claim is essential. And the procedural question, because I, I would like to understand exactly why it matters what Byford and NECA held. Essentially, NECA and Byford, when you put them together, basically indicate the Nevada Supreme Court does not believe this Court's decision in Sandoval that the Nevada CASL and jury instruction, which eliminate, it doesn't have, which only discusses premeditation and not willful and deliberate, implicates Federal law. I mean. And your argument is that although you didn't exhaustion and you agree you didn't. Yeah. It would have been futile because just, at least with regard to the appeal, shortly before the appeal, Byford was decided. Is that basically it? That's correct. That's, that's the claim. Okay. And, and the proof of that is NECA where, where 7 years later they said we still don't believe it. Absolutely. So that's the claim. The procedural issue, it's my understanding, again, that the notice of appeal, NECA sets forth the terms on which they would decide whether, sets forth the terms on which they would consider a Byford claim and Mr. Amati's been finalized before Byford was decided. That's clearly in NECA. That's, they set forth that standard in, in NECA, that Byford only applies to those claims that were still pending when NECA, excuse me, had not been decided when Byford was entered, if that makes sense to you. So it was pending on appeal. So your case was pending on appeal when Byford was decided. No. Our case was filed, a notice of appeal was filed one month after Byford was decided. It's my understanding, reading what they say in NECA, that they would not have considered that claim, and so I believe that it is a Federal claim. If the case is pending on appeal, so you filed a notice of appeal, so it was, the appeal was still pending, and Byford was decided before the appeal was decided. No. Amati's, Amati's, Amati's notice of appeal was filed one month after Byford was decided. So it wasn't final at that point. So your case was not final at that point. I guess I'm not understanding. I mean, the case is not final until the appeal has been determined, and you had just started the appeal process. Byford had come down, and so you were entitled to the benefit of Byford. That's correct. You were or were not entitled to it. I thought your position is you weren't entitled to it. We weren't entitled to it. Because? I think, I think you're going around in circles. We are going around in circles. Maybe we should move on to the next issue. The next issue is the First Amendment issue. Dawson v. Delaware makes that a argument, makes admissibility of First Amendment material based upon relevancy. The lyrics of the song which Mr. Amati wrote weren't relevant to anything in this case except his propensity to kill. Now, I understand that relevancy arguments are a matter of State law. However, the fact is, is that if they're not relevant, then it's a violation of Federal law under Dawson. But we're under an AEDPA standard here, right? So we have to say that the State court's application of Dawson would be? Unreasonable. Objectively unreasonable. Well. You know, given that there's this relevancy as a question of State law, I'm puzzled about how we could say it was unreasonable. Because it was a misapplication of that State law. In fact, is in, in. We don't worry about misapplications of State law right under Estelle. So that's not an issue. It would have to be an unreasonable application of the Dawson rule or contrary to Dawson. Well, it is contrary to Dawson because it wasn't relevant. It just wasn't relevant. What about our Curtin opinion? Pardon me? What about this Court's on-bank opinion in Curtin? I don't. I'm not familiar with that, Your Honor. Well, that's the closest in case about First Amendment, the First Amendment privilege, so to speak, in a criminal case. You're not familiar with that? No, I'm not, Your Honor. That's not useful. I understand. Okay. If you want to reserve time, you should do so. Thank you. All right. Please, Court Counsel, my name is Robert Whelan. I'm a Senior Deputy Attorney General employed by the Office of the Attorney General of the State of Nevada. I have the privilege of representing the respondents in this matter. I'm not going to talk, with all due respect to the Court, about uncertified issues, because this Court doesn't have jurisdiction to consider them. And, frankly, I feel I'm being ambushed in this particular matter by Mr. Yowie's discussion of those issues. I came prepared to discuss the certified issues. I think that's fair. And if we want to certify them, we will do so and you'll get a chance to brief them. I appreciate that very much, Your Honor. With respect to the certified issues, the Petitioner complains about various and sundry references made by the prosecutor in the closing argument saying that the defendant lied during the course of the testimony. If you examine the closing argument of counsel, he tied that into the jury instruction that was given, which indicated that if the jury were to find that anybody willfully lied during the course of their testimony, the jury could disregard the testimony, either in whole or in part. That doesn't seem to be going anywhere. But what about the implied malice issue? I find that very confusing. I thought that, in general, I mean, the prosecutor argued in the closing argument that, as I understand it, that if they found the implied malice, he would be guilty of first-degree murder. That's not true, is it? Or is it? Well, I don't recall that being the argument, but in any event, they did find him guilty of first-degree murder. And under Nevada law, implied malice hasn't got, you know, it's irrelevant. We point that out in our brief. You think it would be is what I'm saying, but the instructions were quite confusing. I don't know where it said that implied malice. I mean, I've seen California instructions where they're quite clear about this. But this didn't seem clear to me. And then you have the prosecutor, let me see if I can find it, saying, well, go ahead. I'll see if I can find it. Well, in any event, Your Honor, as this Court has already recognized, this is a situation under the Anti-Terrorism and Effective Death Penalty Act. The implied malice instruction has withstood scrutiny. Mr. Yohe's complaint that California doesn't like it is irrelevant to the consideration because the United States Supreme Court has not said that it's improper. We point to ere virtus cretis for that proposition. In any event, the implied malice instruction that was given in this particular in this case has withstood, you know, scrutiny. You can't grant relief on that because this is an edge case in the first instance. Moreover, I would point to the various and sundry facts with respect to this particular slaying. The victim, Mr. Dyer, and his friend were walking around 2 o'clock in the morning when they were accosted by three people in dark clothing wearing hoods. The girlfriend noticed that apparently they said something, break yourself or something like that. They proceeded to continue to walk on. The girlfriend noticed that Mr. Dyer, on Mr. Dyer's chest, there was a red dot. Well, we come to find out that's from the laser sight that the defendant had on his Celtic 9-millimeter pistol, an enhanced aiming device particularly useful at night, which clearly shows premeditation, deliberation, first-degree murder in this particular case. Here's the prosecutor's argument that I was referring to. It's on page 363 of the excerpts. He reads the implied malice instruction and then says, so again, no motive we have to prove. The malice does not have to come from anger or hatred. It says, but what is malice? And he may resolve from an unjustifiable or unlawful motive which proceeds from a heart fatally bent on mischief and consequences. That's what malice is. That's what you have, and that is the defendant, someone who has a heart fatally bent on mischief or with reckless disregard of consequences and social duty. And then he reads, malice which may be implied when no considerable provocation appears, no provocation in these cases, or when all the circumstances of the killing show an abandoned and malignant heart. An abandoned and malignant heart. That's what you have in these cases. So he seemed to be arguing for first-degree murder based on the implied malice, and I don't know what in the instructions precluded that. Well, the instructions that they were told, first of all, that the instructions were the law in the case, not what counsel argued them to be regardless. Moreover, that's not the attack that was presented on the malice instruction. The malice instruction is they said that it was vague, not that the prosecutor argued it improperly or anything else. I'm not saying that. I think the prosecutor argued it that way because the instructions were subject to the interpretation that he was giving it. Well, I respectfully disagree, and I would argue that even if even the instructions negates the notion that you could find somebody guilty of first-degree murder on implied malice. Where is that? I beg your pardon? Where in the instructions would somebody understand that you couldn't find him guilty of first-degree murder with this very general implied – because your main argument against the implied malice argument is, well, they found him guilty of first-degree murder, so it doesn't matter. So there's also evidence of that which would render any error harmless under Brecht. It didn't have a substantial and injurious verdict on the verdict, given the overwhelming weight of the evidence that was presented in this case. You can't come to any other conclusion that it was premeditated and deliberated, given the facts and circumstances on this. But when I looked at the actual jury instructions, the instruction for first-degree murder, and that incorporates the instruction for premeditation, I didn't see any reference to malice at all. Where did malice come into the instructions? May I have just a moment, please, Your Honor? Yeah. I have it at ER 97 and 98 was instructions 11 and 13. And as a general – in my notes show, ER 97 and 98 for instruction number 11 is the one specifically for first-degree murder, and then number 13 explains premeditation. They show on instruction 11, murder of the first degree is perpetrated by any kind of willful, deliberate, or premeditated killing. Excuse me. Where it comes in is in the definition of murder. Murder is the unlawful – instruction number 8 of 94. Murder is the unlawful killing of a human being with malice or forethought, whether expressed or implied. Right? And then you need malice or forethought. And that's where you have this instruction on 96 about expressed malice and implied malice. And then you have murder of the first degree is murder which is perpetrated by any kind of willful, deliberate, and premeditated killing. So it's here that you need both. You need malice and you need willful, deliberate, and premeditated killing. And the question is whether for – if you have willful, deliberate, and premeditated killing, the malice, the intent, can be implied rather than expressed. What's the law on that? Well, that's why we cited Scott v. State, which says that if they find first-degree murder, they necessarily found it was deliberate, willful, and with premeditation and necessarily with expressed malice. It's necessarily – explain that to me. I mean, it's necessarily with expressed malice because it must have been intentional if it was willful, deliberate, and premeditated. Is that what you're saying? I mean, that makes sense. I understand. That's the law in the State of Nevada is that if there's first degree, that means that the jury necessarily found that it was deliberate, willful, premeditated, and therefore was expressed malice, as set out in Instruction No. 11. But implied malice does not come into play where there's a finding of first-degree murder. Are you familiar with our case, Ficklin v. Hatcher? I beg your pardon, Your Honor. Are you familiar with our decision in Ficklin? Ficklin? Yeah, I don't think that was cited in your briefs. That's fine. Just very quickly, with respect to cumulative error, it is our position that their cumulative error does not, in fact, exist. It is also our position that Parle v. Reynolds was erroneously decided for a couple of reasons. Excuse me. I guess I've run out of time. You have run out of time. But thank you very much for your argument. It was helpful. You have about a minute left. Thank you very much. How long do I have? About a minute. Judge, I'd like to briefly address the Dawson issue. I'm sorry. I'm not hearing you. I'd like to briefly address the Dawson issue. If, indeed, Supreme Court's making unreasonable decisions, what is an unreasonable decision under those circumstances? It seems to me that if it's always a matter of state law, then it's never reviewable by the federal courts. Now, with regards to malice, jury instruction number 10 was the malice instruction. Under Nevada law, express malice clearly applies to first-degree murder. All right. So why isn't it simply true that if they found willful, deliberate, and premeditated killing, they found express malice and they applied malinstruction? It doesn't matter. Because they couldn't find willful, deliberate, and premeditated killing, because they didn't have that instruction, because this plays into the Byford claim. The instruction under Nevada simply gives them, simply gives them premeditation. In addition. But it doesn't say that. It says it's perpetrated. In fact, what they were given was willful, deliberate, and premeditated killing. That's what they said. That's right. And they did not have any. I'm sorry? They did not have any definition of willful and deliberate. All right. But that's the Sandoval argument, really. Yes. It's not the applied malice argument. In addition, the fact is the prosecutor, there was nothing in the instructions that said second-degree, first-degree murder, you can find express malice. Second-degree murder, there is, doesn't apply. Excuse me. That implied malice doesn't apply. The prosecutor was free to argue to this jury that this was a deliberate, an abandonment, a malignant heart kind of murder, and it's second-degree murder. There's nothing that tells the jury where to use which definition of malice. The two issues kind of merge together. The one that was certified and the one that was uncertified are interlocked, as you're putting them. I didn't hear you there. I said the certified and uncertified issues are sort of interlocked in your opinion. This is correct. Okay. Thank you very much. That was helpful. The case of Mahdi v. Walden, Crawford, I'm sorry, is submitted.
judges: Goodwin, Berzon, Ikuta